IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLEWELLYN A. GRIFFO, ) | |
| ) | |
| Claimant, ) | No. 13 CV 7245 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Llewellyn A. Griffo ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.]

Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 16.] For the reasons stated below, Claimant's motion for summary is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Effective January 31, 2006, Claimant filed an application for SSI, alleging a disability onset date of May 13, 2005. (R. 191-193.) After an initial denial (R. 115, 117), denial on reconsideration (R. 116, 123), and two hearings (one without and one with counsel) (R. 22-40, R. 41-114), the ALJ denied his application (R. 9-21). The Social Security Appeals Council denied a

request for review. (R. 1-4.) But a Magistrate Judge of the United States District Court for the Northern District of Illinois later remanded the case for further proceedings. (R. 903-926.)

In the meantime, on August 4, 2009, Claimant filed another SSI application. *See* R. 692. The two applications were associated, that is considered together, on remand. (R. 692.) The ALJ held a new hearing on January 11, 2012. (R. 718-804.) At that hearing, Claimant, who was represented by counsel, appeared and testified. (R. 720, 726-766.) Also, Deborah Girffo, his mother, appeared and testified. (R. 720, 766-778.) Finally, a medical expert ("the ME"), Dr. Walter Miller (R. 720, 778-794), and a vocational expert ("the VE"), Thomas Gusloff (R. 720, 794-803), appeared and testified.

A couple months after the hearing, on March 30, 2012, the ALJ issued his written decision. (R. 692-711.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 711.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the application date of January 31, 2006. (R. 694.) At step two, the ALJ found that Claimant had the severe impairments of asthma, obesity, status post multiple gunshot wounds, history of alcohol and drug abuse, history of being a slow learner, scoliosis, arthritis of the right knee, hypertension, and depression with features of post-traumatic stress disorder and psychosis. (R. 694.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. 694.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to work between the sedentary and light levels, provided that the required tasks were

unskilled, routine, and simple, and involved one- to- three steps. (R. 696.) More specifically, the ALJ found that Claimant could frequently understand, remember, and carry out very short and simple instructions, but rarely could understand, remember, and carry out detailed instructions. (R. 696.) The ALJ also found that Claimant could not have more than occasional contact and minimal interaction with the general public. The ALJ found that Claimant's RFC was further limited because he required a single cane to ambulate, could sit only six hours during an eight-hour workday, and was limited to standing/walking four hours during an eight-hour workday. (R. 696.) The ALJ found that Claimant only could: (1) lift/carry twenty pounds occasionally and ten pounds frequently occasionally; (2) climb ramps/stairs occasionally; (3) never climb ladders, ropes, or scaffolds; (4) never be exposed to unprotected heights or hazardous moving machinery; (5) stoop, squat, crouch, kneel, or crawl occasionally; and (6) balance frequently. (R. 696.) Finally, the ALJ found that Claimant should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. (R. 696.)

Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 709.)

Then, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 710.) Specifically, the ALJ found Claimant could work as a waxer, stuffer, and preparer of plated products. (R. 711.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 711.)

3

On May 1, 2012, Claimant sought review of the ALJ's decision. (R. 671.)[1] On August 13, 2013, the Social Security Appeals Council declined to assume jurisdiction. (R. 658-661.) The ALJ's decision became the final decision of the Commissioner. (R. 659.) *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means relevant evidence that a reasonable person would accept as adequate to support an ALJ's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under this standard, a mere scintilla of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). In reviewing the Commissioner's decision, a court cannot reconsider the evidence or make independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Even when there is adequate evidence in the record to support an ALJ's decision, the findings will not be upheld if the ALJ failed to build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While an ALJ is not required to address every piece of evidence in the record, her analysis must be thorough enough for the reviewing court to understand her reasoning. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, an ALJ must provide enough detail and clarity to allow

---

[1] It appears that this request may not have been received until August 23, 2012. (R. 670.)

4

meaningful appellate review. *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant asserts that the ALJ made two errors. First, Claimant argues that the ALJ erred by rejecting Dr. Harvey Friedson's opinion. Second, Claimant contends that the ALJ erred by rejecting Dr. Walter Miller's opinion. The Court finds that the ALJ did err by rejecting Dr. Friedson's opinion. Because this conclusion requires reversal, the second alleged error need not be addressed at this time.

On August 20, 2011, Dr. Friedson evaluated Claimant for two hours. (R. 1010.) During this examination, Dr. Friedson performed a formal mental status evaluation, a Wechsler Adult Intelligence Scale – IV test ("IQ test"), and a Wide Range Achievement Test (4th Edition) ("WRAT"). (R. 1003.) Based on these tests, he wrote a Psychological Evaluation and Formal Mental Status Evaluation for the Bureau of Disability Determination Services. (R. 1003-1011.) On the same date, Dr. Friedson also filled out a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 1012-1014.) He concluded that Claimant had "marked" and "extreme" limitations in a number of areas. (R. 1012-1014.)

The ALJ found that Claimant so significantly manipulated the mental status evaluation, IQ test, and WRAT – because he put forth poor effort and provided inaccurate information – that the test results were completely invalid. (R. 709.) No medical opinion supports this supposition by the ALJ. The ALJ appears to have reached this conclusion on his own. Although Dr. Friedson mentioned several times in his Mental Status Evaluation that he had questions about the validity of Claimant's test results (R. 1007, 1008, 1010), he did not say or conclude that the test

5

results were completely invalid. Rather, he arrived at a six-part Axis I diagnosis and concluded Claimant had serious limitations in a number of work-related areas. (R. 1010, 1012-13.)

Without supporting medical evidence or authority, an ALJ cannot substitute his judgment for that of a doctor. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000). It is the job of the medical professional to evaluate a patient's mental state, make a diagnosis, and identify any resulting limitations. *McBride v. Massanari*, 169 F. Supp. 2d 857, 862 (N.D. Ill. 2001); *Wiggins v. Apfel*, 29 F. Supp. 2d 486, 492 (N.D. Ill. 1998). During this process, it is also the professional's responsibility to assess potential methodological issues. *Craig v. Apfel*, 10 F. Supp. 2d 966, 970 (N.D. Ill. 1998). This extends to determining how a patient's exaggerated responses impact the medical information discovered during an examination. *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 797 (E.D. Wis. 2004).

The record shows that Dr. Friedson was able to assess Claimant's performance during his evaluation. He conducted Claimant's consultative examination and administered the tests. He observed Claimant's conduct that the ALJ found concerning. Dr. Friedson commented on Claimant's demeanor during the examination and said he questioned the validity of the mental capacity portion of the evaluation and the validity of the formal test results, the issue the ALJ found concerning. (R. 1007, 1008, 1010.) But Dr. Friedson also apparently felt comfortable reaching a six-part Axis I diagnosis of "(1) Depressive Disorder, NOS [not otherwise specified]; (2) Post Traumatic Stress Disorder; (3) History of Antisocial Behavior; (4) History of Druge Use By Report; (5) 8th Grade Education – Reported History of Special Education; (6) Complains of Chronic Pain." (R. 1010.) He also felt he had enough information to assess Claimant's "ability to do work-related activities (mental)" in his medical source statement. (R. 1012-13.)

If Dr. Friedson's mental health training taught him that Claimant's performance made it impossible to render an opinion, he was free to say so. But he did not do that. Instead, he rendered six diagnoses and assessed the resulting limitations on Claimant's ability to carry-out work-related tasks. (R. 1010, 1012-1013.) There is no medical opinion or other authority that contradicts Dr. Friedson's opinion concerning the veracity of his examination and his ability to make diagnoses and identify limitations. The ALJ's lay opinion, standing alone, cannot support the decision to substitute his judgment for that of Dr. Friedson.

After concluding that Dr. Friedson's examination was flawed, the ALJ then asserted, in one sentence, that this also warranted giving no weight to Dr. Friedson's medical source statement. (R. 709.) As already detailed, the ALJ's underlying reason for ascribing no weight to Dr. Friedson's diagnosis based upon his examination of Claimant and his resulting opinion does not bear scrutiny. That means it cannot support the ALJ's determination to give no weight to Dr. Friedson's medical source statement. If the ALJ needed more information or a clarification from Dr. Friedson, he could have asked for it. He did not do so. Accordingly, without any contradictory evidence in the record or anything within Dr. Friedson's opinion itself cited by the ALJ as a reason to reject it, the ALJ's decision on that score cannot stand.

The Commissioner argues that Dr. Friedson's medical source statement must be disregarded because he merely recited Claimant's subjective complaints. But this is not an accurate characterization of the record. Dr. Friedson did not just repeat what Claimant and his mother said. Neither Claimant nor his mother, for example, told Dr. Friedson that Claimant had a depressive disorder, post-traumatic stress disorder, or an extreme limitation in his ability to carry out complex instructions. Instead, Dr. Friedson spent two hours conducting an examination of Claimant. He considered the information conveyed to him by Claimant and his

7

mother, including the many objective facts. He made diagnoses based on his observations. And he determined what limitations resulted from those diagnoses and observations. This is a far cry from a mere recitation of Claimant's subjective complaints.

Dr. Friedson also relied on three objectively verifiable conditions when completing his medical source statement concerning Claimant's mental abilities: (1) Claimant's eighth grade education and history of special education, (2) his history of antisocial behavior, and (3) his complaints of chronic pain. (R. 1010, 1012-1013.) Claimant and his mother provided Dr. Friedson with information about each of these subjects, detailing many specific facts. They named the schools Claimant attended and the grade level he reached. (R. 1005, 1009.) Likewise, they explained what he did during the day, how much time he spent at home, when he had been in jail, and that he had few friends. (R. 1006, 1007, 1009, 1010.) Dr. Friedson made objective observations with respect to Claimant's pain (R. 1004), and he was told about the multiple times that Claimant was shot, the lasting effects of those shootings, some of his operations, and some of his diagnosed conditions, (R. 1005-1006, 1009). These are not subjective complaints; they are objective facts. Moreover, the record contains support for each of these facts.

The Commissioner's argument suffers from another flaw. There is a meaningful difference between merely repeating a claimant's subjective complaints and considering a claimant's subjective complaints when forming an independent medical opinion. It is well-accepted that doctors consider patients' descriptions of their conditions when forming medical opinions. *Worzalla*, 311 F. Supp. 2d at 797. A patient's subjective reports play a particularly important role in assessing mental conditions. *Hampton v. Colvin*, 2013 WL 6577933, at *7 (N.D. Ill. Dec. 13, 2013). Mental health professionals *rely* on information provided by patients

8

in assessing and treating them. *Lucas v. Astrue*, 2013 WL 3934221, at *7 (N.D. Ill. July 30, 2013).

A disinterested mental health professional's opinion is entitled to considerable, although not necessarily conclusive, weight unless it is contradicted by another medical opinion. *Hughes v. Colvin*, 2015 WL 2259833, at *12 (N.D. Ill. May 12, 2015). Here, there was no contrary opinion. And the ALJ's attempt to play doctor did not justify casting aside Dr. Friedson's opinion. Therefore, the ALJ erred by giving Dr. Friedson's opinion no weight.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 7, 2015